IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                               No.    16 CR 0289 MCA
                                            16 CR 2107 MCA

TYSON SICILY ATOLE,

       Defendant.

## SENTENCING MEMORANDUM
## AND REQUEST FOR VARIANCE

NOW COMES the defendant, Tyson Sicily Atole, by and through his counsel, Benjamin A. Gonzales, Assistant Federal Public Defender, and offers the following comments for the Court to consider in making its sentencing decision in his case. Pursuant to *United States v. Booker*, 125 S.Ct. 738 (2005), and its progeny, and 18 U.S.C. § 3553(a), Mr. Atole requests that the Court impose a term of imprisonment less than the advisory sentencing guideline range for his sentence.

1.     On May 2, 2015, Mr. Atole was at his home on the Jicarilla Apache Reservation. He had been drinking alcoholic beverages and he was intoxicated. Shortly before the incident giving rise to this case occurred, Mr. Atole was told by others that Jane Doe 1 was intoxicated and was being abusive towards Mr. Atole's young niece. Very close in time to when Mr. Atole heard about alleged abuse of his niece by Jane Doe 1 an argument took place between Mr. Atole's mother and Jane Doe 1. Harsh

words were used and voices were raised.  A short time later, Mr. Atole confronted Jane Doe 1.  Jane Doe 1 was injured as a result of Mr. Atole striking her with a bottle and his hands and foot.  Mr. Atole was not arrested or prosecuted in connection with this incident by the Jicarilla Apache Nation.

2.      On January 28, 2016, Mr. Atole had been drinking alcoholic beverages and he was intoxicated.  At his home, Mr. Atole was confronted by an officer of the Jicarilla Apache Nation Police Department who attempted to question him about a complaint received by her department.  Mr. Atole did not answer the officer's questions and attempted to enter his house.  The officer grabbed Mr. Atole and attempted to stop him.  Mr. Atole resisted the officer and struck her several times on her arm.  The officer was injured as a result of Mr. Atole striking her arm.  Mr. Atole was not arrested or prosecuted in connection with this incident by the Jicarilla Apache Nation.

3.      On January 26, 2016, Mr. Atole was indicted by the U.S. Government in connection with the incident occurring on May 2, 2015.  On February 3, 2016, Mr. Atole was arrested.  After appearing at his arraignment on February 25, 2016, Mr. Atole was released to the third party custody of the La Pasada Halfway House where he lived until his guilty plea on May 16, 2016, after which he was detained.  Mr. Atole followed all orders of the Court, and directions of his Pretrial Services officer, in full compliance with all conditions of release set at his arraignment.  Mr. Atole has not consumed alcohol since before his arrest on February 3, 2016.

4.      On May 16, 2016, Mr. Atole pled guilty to the crimes of assault with a dangerous weapon and assault resulting in serious bodily injury.  A Presentence Report (PSR) was ordered by the Court and prepared by the U.S. Probation office.  The PSR sets Mr. Atole's total offense level at 25, **PSR ¶ 45**, and his criminal history category as I.  **PSR ¶ 51**.  As such, Mr. Atole's advisory sentencing guideline imprisonment range is 57 to 71 months.  **PSR ¶ 78**.

5.      In *United States v. Booker*, 125 S.Ct. 738 (2005), the United States Supreme Court abolished the mandatory nature of the U.S. Sentencing Guidelines and held that they are now advisory; they are only one of the factors to be considered, by the District Court, in fashioning a sentence pursuant to 18 U.S.C. § 3553(a).  The advisory guideline sentencing range may serve as a starting point for the Court, but *all* of the sentencing factors set forth in 18 U.S.C. § 3553(a) *must be considered* by the Court when imposing a sentence.  Since the decision in *Booker*, the § 3553(a) factors, "have a new vitality in channeling the exercise of sentencing discretion."  *U.S. v. Trujillo-Terrazas*, 405 F.3d 814, 819 (10th Cir. 2005).

6.      Perhaps even more important, however, is that *Booker* establishes a new, independent limit on the sentence that may be imposed.  The primary sentencing mandate of § 3553(a) states that courts must impose the minimally-sufficient sentence to achieve the statutory purposes of sentencing - retribution, deterrence, incapacitation, and rehabilitation:

> The court shall impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)].

3

18 U.S.C. 3553(a) (emphasis added).  This so-called "parsimony provision" is not simply a factor to be considered in determining a sentence; it represents a cap above which the Court is *statutorily prohibited* from sentencing - even when a greater sentence is recommended by the sentencing guidelines.  *See United States v. Denardi*, 892 F.2d 269, 276-77 (3rd Cir. 1989) (Becker, J, concurring in part, dissenting in part).

7.    The guiding rationale for the Court to make a sentencing decision in any criminal case, including Mr. Atole's case, should be that the sentence imposed is "sufficient, but not greater than necessary" to accomplish the purposes of sentencing and in consideration of all of the factors delineated in 18 U.S.C. § 3553(a), as well as the sentencing guidelines.

8.    Mr. Atole realizes that the crimes he committed, in causing serious injury to two people, are very serious offenses and that they are treated gravely under federal law by the Court.  Mr. Atole realizes that the United States Sentencing Guidelines recommend a long term of imprisonment followed by supervised release as the consequences of his conduct.  Mr. Atole realizes that, although he has already spent nearly ten months in jail, it is possible for the Court to sentence him to a much longer term of imprisonment yet to follow.  Mr. Atole asks that this Court consider the circumstances of his life prior to his commission of these crimes in making its sentencing decision.

9.     Mr. Atole's history and characteristics are described in great detail in Part C of the PSR, Offender Characteristics, in paragraphs 55 through 76.  As the probation officer has set forth, it is clear that Mr. Atole grew up in an unstable family with a history of alcohol use or abuse and fighting between father and mother, with possible abuse of Mr. Atole by his father.    Conflict within Mr. Atole's family contributed to the early onset of depression, with accompanying anxiety, which apparently resulted in a suicide attempt by Mr. Atole when he was 16 years old by trying to slash his wrists.  The death of his brother by suicide in 2002 when Mr. Atole was 17 years of age, and stabbing death of his step-father Mr. Valdez, very near in time to his brother's death, were serious stressful events in Mr. Atole's life. Considering his life as a whole up to that point, it is not too surprising that Mr. Atole should turn to alcohol as a means of coping with the internal stress he felt.  However, it appears that he was able to cope with the family problems and deaths in his family fairly well until he was 18 years of age when he began to drink alcohol.  Evaluations of Mr. Atole completed in 2015 at the Jicarilla Apache Behavior Health Department and in 2016 at A New Awaking during Mr. Atole's pretrial release both indicate the presence of personal or family problems closely associated with Mr. Atole's drinking and abuse of alcohol.  Apparently, Mr. Atole turned to alcohol when he lived on the reservation the way many people would turn to doctor prescribed medication for problems with depression and anxiety.

10.     What has just been said is not offered as an explanation to justify Mr. Atole's criminal behavior.  It is simply offered as a way of gaining insight into why a 30-

5

year-old man with a negligible criminal history – a history devoid of alcohol or violent crime offenses – would become violent during two states of intoxication. Mr. Atole did not have the strength to help himself seek help before some harm came of his drinking; nor did any family or friends push him to obtain such help. Now Mr. Atole faces severe consequences for two acts which might have been averted if he had sought help not too long ago.

11.    The occurrence of these events with their serious consequences caused Mr. Atole to stop drinking alcohol completely and he has been abstinent from its use since the time of his arrest.  Mr. Atole took part in treatment for his substance abuse problems during his three plus months of release to the La Pasada Halfway House.  Mr. Atole intends to continue to avail himself of any treatment available to him in a custody setting and after he is released from serving a sentence of imprisonment while on supervised release.   Mr. Atole has skills obtained through education and job experience with his tribal government and other employers.  It is his hope that he can return to school and complete his associate or bachelor degree in an area of interest that will help him support himself when he is out of custody on supervised release, and perhaps be able to return to working with his tribe on various projects at the Jicarilla Apache Reservation.

12.    To supplement the information contained in Part C of the PSR, attached to this memorandum are letters from Mr. Atole and Mr. Atole's family and community members.     All of the people who write on behalf of Mr. Atole speak well of him. The President of the Jicarilla Apache Nation, the Director of the Jicarilla Oil and

Gas Administration, Mr. Atole's former co-workers, Mr. Atole's cousin and many friends of Mr. Atole and his family all write on his behalf. They are unanimous in their assessment of him as a young man of high moral character, great native ability and the potential to succeed in life while bringing comfort and happiness to many people with whom he comes in contact. Despite being aware of the reason that he is before this Court, and the reason for which they were asked to write letters on his behalf to this Court, they prove his value individually and as a member of their community. They ask this Court to show compassion and leniency to a person who has committed serious crimes after so many years of being law abiding and without criminal history. These people show the Court that Mr. Atole has promise as one who will go back to his community and do well – for himself and his fellow community members.

13.  Mr. Atole recognizes that there is imprisonment ahead of him in his future, and he stresses to the Court that while he is incarcerated he wants to continue with treatment for alcohol abuse and to obtain education to further train himself for his life in the community when he is released. This Court's recommendation to the Bureau of Prisons that Mr. Atole be accepted to the 500 hour Residential Drug Abuse Program would help him to accomplish the first of those two commitments. Whatever sentence this Court chooses to impose, Mr. Atole is making himself ready to accept it, and asks that the Court help him to serve it in a way that will be productive while he is incarcerated and productive when he is released.

14.    After *Booker,* this Court now has a choice between different types of sentences available to it for imposition upon Mr. Atole.  The Court can simply sentence Mr. Atole to incarceration as recommended by the advisory sentencing guidelines followed by supervision, or the Court can sentence Mr. Atole to any lesser sentence of imprisonment followed by supervision with conditions of varying degrees of strictness and restrictiveness of Mr. Atole's liberty.  It is clear that the Court has discretion to sentence Mr. Atole to reduced imprisonment followed by supervised release with home detention, or a community corrections center, contingent on full-time work in the community.

15.    The PSR calculates Mr. Atole's advisory sentencing guideline imprisonment range to be 57 to 71 months based on an offense level of 25 and criminal history category of I.  **PSR ¶ 78**.  *United States v. Booker, supra,* and 18 U.S.C. § 3553(a)'s parsimony provision impose a statutory cap on sentences, and no matter what is recommended under the sentencing guidelines, the sentence must be "sufficient, but not greater than necessary" to achieve the purposes of sentencing.  Here, it is respectfully submitted that a sentence of imprisonment below 57 months is sufficient to achieve the purposes of sentencing.  Mr. Atole has been in federal custody since May 16, 2016, nearly ten months of time in jail awaiting sentencing.

16.    Justice would be served by this proposed sentence.  Mr. Atole recognizes that his offense was serious and that the harm that resulted from it warrants punishment.  Mr. Atole's acts and their consequences have deterred him from the use of alcohol and given him a good start on permanent sobriety and abstinence.  His recent

8

imprisonment has reinforced this deterrence. Mr. Atole has never served a jail sentence before now. As the Court can see from the PSR, Mr. Atole has three events comprising his criminal history, all traffic violations. He has never been charged with a crime, much less prosecuted and sentenced to imprisonment. The nine plus months he has spent in jail since his guilty plea awaiting sentencing are the longest he has ever been locked up. The public need not fear from further crimes of Mr. Atole; he has learned a hard and valuable lesson taught by imprisonment: his freedom depends on his good and law abiding behavior. The benefit to the public, from his rehabilitation and giving back to others, would be substantial.

17. The purposes of sentencing would be served equally well by a sentence less than 57 months imprisonment. Such a sentence would reflect the seriousness of the crimes committed by Mr. Atole by showing him that a period of time locked away from his family, his community and his society is the minimum cost for violating federal law. A sentence of less than 57 months imprisonment would impress upon Mr. Atole his need to respect the law. Without doubt, Mr. Atole could obtain any needed medical care and correctional treatment for his past alcohol abuse, as well as educational and vocational training while he completes his sentence to give him a broader skill base to draw upon when he is released. Mr. Atole is asking that the Court reduce his punishment somewhat. If a reduced sentence of imprisonment by this Court would be lower than sentences imposed upon defendants with his lack of criminal history, under the circumstances of his crimes and considering his history and characteristics, such a disparity would not be unwarranted. Many defendants with

varying criminal histories may find themselves in criminal history category I for sentencing purposes.  Within that group, Mr. Atole will be much closer to the end of the spectrum whose end point would be no criminal history.  A term of imprisonment less than 57 months would be a just sentence and would serve the purposes of sentencing for him and the community.

18.    In determining the minimally-sufficient sentence, the Court must essentially ask whether a more severe sentence would achieve greater retribution, deterrence, incapacitation or rehabilitation.  Respectfully, it would not in this case.  In making this judgment, it is important to examine the consequences to Mr. Atole of having been imprisoned already for nearly ten months.  The impact has been dramatic and lasting for him.  As stated above, the sentencing purposes of retribution, deterrence, incapacitation, and rehabilitation would not be any better served by locking Mr. Atole in a prison cell for 57 or more months.  Mr. Atole's prison and his punishment have been being separated from his family and his community.  A sentence less than the 57 month minimum of the advisory guideline imprisonment range, followed by supervised release, would be the minimally-sufficient sentence mandated under *United States v. Booker, supra,* and 18 U.S.C. § 3553(a).  Notwithstanding the facts of each incident for which Mr. Atole has admitted guilt the guideline sentence between 57 and 71 months would be excessive, when Mr. Atole's history and characteristics are weighed into the balance.  The government would have this Court sentence Mr. Atole as it would someone who has done wrong not just now but many

times before and who needs a long sentence to protect the public from further criminal acts.  That is not the case before this Court here.

19. A sentence of imprisonment less than 57 months, followed by supervised release, is the sentence that would be sufficient but not greater than necessary under 18 U.S.C. § 3553(a) and would serve the purposes of sentencing.  Such a sentence would reflect the seriousness of Mr. Atole's offenses; promote respect for the law; provide just punishment for the offenses; afford adequate deterrence to criminal conduct; protect the public from the possibility of other crimes of Mr. Atole and provide Mr. Atole with needed treatment as well as education and vocational training in the most effective manner.

20. Mr. Atole is truly sorry for what he has done, and for what he must now accept responsibility.  Mr. Atole wishes that he could change the history leading up to this case.  Mr. Atole regrets not seeking help sooner for his alcoholic behavior and its occasional violent expression.  Since his arrest in February 2016, Mr. Atole has made efforts to change his behavior and the life it dictates, and he is committed to continuing with those efforts while he is in prison and on supervised release and after he has completed his sentence.  Mr. Atole asks the Court to give him the chance to do that before the 71 months requested by the government would allow him to do.  The mandate of 18 U.S.C. § 3553(a) to impose a sentence "sufficient but not greater than necessary" should be observed by this Court in imposing a sentence less than the 57 month minimum of the advisory guideline imprisonment range followed by an appropriate period of supervised release.

11

21.    Finally, Mr. Atole asks the Court to recommend that the Bureau of Prisons designate

him to serve his federal sentence at a correctional facility where he can participate

in the 500 hour Residential Drug Abuse Program.

22.    Because Mr. Atole is requesting a downward variance from the advisory guideline

minimum sentence of 57 months stated in the PSR, it is presumed that the

government opposes his request.

WHEREFORE, defendant Tyson Sicily Atole requests that the Court sentence him

to a reduced term of imprisonment, followed by supervised release, as requested above.

I HEREBY CERTIFY THAT on the
10th day of February 2017, I filed
the foregoing electronically through the
CM/ECF system, which caused AUSA
Joseph M. Spindle & USPO Wade Miller
to be served by electronic means, as more
fully reflected on the Notice of Electronic
Filing.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489

  /s/      *filed electronically*
BENJAMIN A. GONZALES, AFPD
Attorney for Defendant

  /s/          *filed electronically*